THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,   No. CR 18-20030

    Plaintiff,   Honorable Avern Cohn

vs.

D-1   JOSEPH DELFGAUW,

    Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States provides this Memorandum in support of its position on sentencing.

**I.   INTRODUCTION**

In early 2008 Delfgauw recruited persons to pretend to be legitimate purchasers of two properties in the Eastern District of Michigan. These "buyers" were paid by Delfgauw for letting him use their names, social security numbers and credit histories to qualify for loans from unsuspecting lenders. The buyers never intended to live in the houses, did not provide the down payment funds and were promised by Delfgauw that they would not have to make the mortgage payments. After the loans were approved, the proceeds were disbursed and loans promptly went into default.   Losses attributable to the fraud are $203,000.

II.     **SENTENCING GUIDELINE CALCULATIONS**

    A.     <u>**Loss**</u>

The PSR and the plea agreement apply a 10 level upward adjustment, pursuant to Section 2B1.1(b)(1)(F), because the losses exceed $150,000. Added to a base level of 7, the combined base level is 17.

In determining the amount of loss resulting from a fraud offense, the district court is to determine the amount of the loss by a preponderance of the evidence. *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006). The sentencing court is not required to compute the loss with precision. The district court need only make a reasonable estimate of the loss, given the available information. *Triana*, 468 F.3d at 320; *see also United States v. Jacobs,* 117 F.3d 82, 95 (2d Cir. 1997)(quoting U.S.S.G. § 2F1.1, comment. (n.9) (1987)). As stated by the applicable Guideline:

> The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference.

U.S.S.G. § 2B1.1, comment. (n.3(C)); *see also United States* v. *Bennett,* 252 F.3d 559, 565 (2d Cir. 2001)(court need only make reasonable estimate of loss).

On appeal, to successfully challenge a district court's loss calculation, a defendant "'must carry the heavy burden of persuading th[e] Court that the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations.'" *United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001)(quoting *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994)).

### III. APPLICATION OF 18 U.S.C. § 3553

Title 18, United States Code, Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. In order to determine the "particular" sentence to impose, this Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines and another is the Commission's policy statements. *See* 18 U.S.C. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38 (2007). For two reasons, this Court should give serious consideration to the advisory Guideline range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor. *See* 18 U.S.C. § 3553(a)(6); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)("The Guidelines remain an essential tool in creating a fair and

uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005)("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread, unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is broad sentencing discretion post-*Booker*. However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753

4

(7th Cir. 2007)(internal quotation and citation omitted), *abrogated on other grounds*. Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event this Court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court cases. The Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any [variance] from the Guidelines and must explain [his] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 552 U.S. at 46. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Gall*, 552 at 50; *see also United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008).

    **A.**    **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

5

Delfgauw's involvement in the fraud he has pleaded guilty to is clear and uncontroverted. Neither the government nor Delfgauw are attempting to make excuses for his behavior. Delfgauw does not suggest that he was not responsible for his actions and the harm they caused. This attitude is in stark contrast to the position of Richard Woolsey, a related defendant who went to trial and to this day refuses to admit his wrongdoing. (Docket Number 11-20203). Perhaps the best window into Delgauw's character is his behavior since the investigation began. He has no other criminal conduct and remains productively employed.

It is not necessary for this court to consider and compare other defendant's situations in making sentencing decisions, however Delfgauw's characteristics, even standing alone, are the type of positive consideration §3553 contemplates.

### B. The History and Characteristics of the Defendant

It is the government's position that when considering Delfgauw's character, the Court should take into consideration his behavior since he was convicted and how that reflects on his acceptance of responsibility.

### C. The Need for the Sentence Imposed to Reflect the

### Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment for the Offense

Again the government does not intend to mitigate the seriousness of this offense. The sentencing guidelines range of 15-21 months is a fair place for the court to start and is adequate to achieve the objectives of the guidelines.

### D. The Need to Afford Adequate Deterrence to Criminal Conduct and To Protect the Public From Further Crimes of the Defendant

There is very little chance, in the government's opinion, that Delfgauw will commit another criminal offense.   This belief is evidenced not only by his actions since the crime was detected, but by the esteem in which he is held by his family, colleagues and friends.

### E. The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

There is no need in this case to adjust the sentence outside the guideline range in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."  § 3553(a)(2)(D).

## IV. MOTION FOR DOWNWARD DEPARTURE

The United States recommends, pursuant to USSG §5K1.1, that the Court depart downward and impose a sentence within a range of **10-16 months**, or approximately 30% *below* the applicable sentencing range.

7

This recommendation is based on Delfgauw's agreement to plead guilty, his debriefing and the fact that evidence he provided was used to obtain a search warrant that yielded evidence used to investigate and convict Richard Dean Woolsey and Ryan Vinco. (Docket Number 11-20203).

Delfgauw has been fully debriefed in this cases and has admitted his responsibility. When this FBI investigation began, Delfgauw was one of the first subjects interviewed. Based on information he provided, the FBI obtained a search warrant that uncovered substantial evidence relating to the conduct of Richard Woolsey and Ryan Vinco. Both of those individuals were charged, Vinco pleaded guilty and Woolsey was convicted at trial. Woolsey and Vinco worked very closely with one another and Delgauw's involvement was not as directly connected to their scheme. After those convictions, a new agent put the case against Delfguaw together. Delfgauw has cooperated and admitted his guilt. He was forthright in his cooperation and information he related early in the investigation led to the convictions of Woolsey and Vinco.

## IV.  **CONCLUSION**

The government submits that the guideline range of 15-21 months is an appropriate starting point for this Court's sentencing consideration. Additionally, the government asks that the Court depart from that range to a range of 10-16 months based on the value of Delfgauw's cooperation and for the reasons cited in the government's Motion for Substantial Assistance Departure.

Respectfully submitted,
MATTHEW SCHNEIDER
United States Attorney


s/ Karen L. Reynolds
KAREN L. REYNOLDS    (P31029)
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI    48226
(313) 226-9672
karen.reynolds@usdoj.gov